Okey, J.
Three questions are presented.
1. At the commencement of the trial, the court, on motion of the defendant, made a general order that the witnesses, as well for the defendant as the state, should be separated, and all the witnesses were directed to retire from the court room. The prosecuting attorney furnished to the sheriff a list of the witnesses for the state, but the counsel for the prisoner said none of his witnesses were then present. At that time a sister of the prisoner was sitting at his side in court, but no subpoena had been issued for her. After several witnesses had been examined in such sister’s presence, the state called as a witness Malvina Wagnej, • and the sister then retired from the court room and remained absent therefrom until called to testify, as hereinafter stated. Malvina testified that the defendant was present in a house adjoining the saloon in which the homicide was committed, at nine o’clock in the morning of the same Sunday, and then made a threat that he would kill Greaves that night. She had testified in the same way on the first trial. After the state had rested, the defendant called his father as a witness, who testified that the defendant was at the house of witness, several squares from the saloon and adjoining house, from early on that Sunday morning until five o’clock in the evening, and consequently could not have made such threat as stated by Malvina Wagner. The defendant then called his sister, above referred to, and stated That they had not expected to call her until, contrary to their expectation, Malvina Wagner was called; that they only desired to prove by her the same fact to *77 which the defendant’s father had testified. The state objected to the testimony of such sister, on the ground that she had disobeyed the order as to the separation of witnesses, the court sustained the objection, and the defendant excepted. Subsequently, the mother and another sister of the defendant, and the defendant himself, testified to the same fact to which his father testified.
It is said, on behalf of the state, that Malvina Wagner was not believed, otherwise the defendant would have been convicted of murder, and hence the testimony of the excluded witness was immaterial and the fact that she was not permitted to testify affords no ground of reversal. But we do not take that view of the testimony of Malvina Wagner. While it tended to show malice and even deliberation, it also tended to show that the fatal blow was given by the defendant and not» by his brother, which was the principal contention on the trial. It does not necessarily follow because the conviction was of manslaughter, that the jury wholly disregarded the testimony of Malvina Wagner. Testimony, therefore, tending to show that her statement was untrue, tended to the acquittal of the defendant ; and notwithstanding four witnesses, the defendant included, testified to the same fact to which the excluded sister was called to testify, we are not prepared to say, under the-circumstances, that the testimony of the excluded sister should be regarded as merely cumulative, in the sense that the error in excluding her, if it was an error, afforded no ground for reversal; for the state endeavored to show, by cross examination as to character and otherwise, that the statements of the four witnesses were wholly unworthy of belief.
We are of opinion that the testimony of the excluded witness was important, in the sense that it was error to exclude it if she was competent, and that she was competent unless the court, in view of what is claimed to be disobedience of the order for the separation of witnesses, was vested with power to prevent her examination. But we think the court was vested with no discretion to exclude the witness on the facts disclosed in the 'record. We do not think it appears she remained in court by collusion with or encouragement of the de *78 fendant or bis counsel, or that she supposed she was in contempt of an order of court. Moreover, the important fact was whether she heard the testimony of her father, and we must say from the record she did not. Laughlin v. State, 18 Ohio, 99, is relied on as showing that the court is vested with discretion, in all eases where the order is not obeyed, to exclude the witness. There the witness was permitted to testify. The principal cases are cited by counsel and will appear in this report. Without attempting to reconcile them — that would be impossible — or to discuss them at length, I state as the result of our examination that this is the law : While the court is vested with discretion to refuse or permit the examination of a witness who has remained in court, by procurement or connivance of the party calling him, in violation of an order for the ■ separation of witnesses, it is vested with no such discretion to prevent such examination where there has been no such procurement or connivance; but the order is to be enforced by the officers in attendance, and disobedience of it punished as a contempt.
2. It is doubtful whether such concert was shown as would have justified the conviction of the defendant, unless he struck the fatal blow'; and hence it was important to determine the real matter in disptite, that is, whether such blow was given by the defendant or his brother George. It is not disputed that on the Sunday evening named, Greaves, between 7 and 8 o’clock, approached George Dickson, brother of defendant, and asked him why he had made a pass at him in the alley. After angry words, Greaves struck him, and instantly afterward the defendant struck Greaves and a fight ensued between them. During this difficulty Greaves received a wound in the temple inflicted with a knife or similar implement, which wound caused his death at three o’clock next morning. There was plain and irreconcilable conflict in the evidence upon the question whether this wound was inflicted by the defendant or his brother George. The defendant offered to show that a few seconds before approaching George Dickson, Greaves said to Tom Collins that he was about to have a difficulty with “ a fellow,” and he wanted Collins *79 to stand by him. Objection being made, the court excluded the evidence, and the defendant excepted. We think the evidence was clearly competent. It was part of. the res gestee, and it tended to support the theory of the defense.
3. Sheridan having given .evidence tending to show that the defendant struck the blow which caused the death of Greaves, the counsel for defendant asked him, with a view to the contradiction of the witness, whether, at a time and place stated, he had not said to Stevens and Imwalle that it was George Dickson who had given the fatal blow. The witness admitted that he had a conversation with the persons named, at the time and place stated, but testified that he did not say to them that it was George Dickson who had given such blow. ■ The prosecuting attorney was then permitted, on reexamination of the witness, to show what he did say to those persons — that he said to them “ it was one of the Dixons.” As the exception of the defendant is rather to the form than the substance of the inquiry, we might be unwilling to reverse for the reason that such testimony was permitted to go to the jury; but the evidence was clearly incompetent. If the defendant had called Stevens and Imwalle to contradict Sheridan, then Sheridan might have been recalled to state what he said ; but until that was done the state could not prove such declarations. Judgment reversed.